# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MELODY HUDSON, | : | |
|     *Plaintiff*, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| INDEPENDENCE BLUE CROSS, LLC, | : | No. 18-3631 |
|     *Defendant*. | : | |

## MEMORANDUM

PRATTER, J.                                                                                                                            MARCH 5, 2019

Melody Hudson brings this employment discrimination lawsuit against her former employer, Independence Blue Cross, LLC, which has filed a motion for partial judgment on the pleadings as to the fourth cause of action: retaliation under the Family and Medical Leave Act. Independence alleges that Ms. Hudson's FMLA claim is time-barred because she has not alleged a willful violation of the FMLA. The Court denies the motion for partial judgment on the pleadings because, at this early stage in the case, Ms. Hudson has pled enough for the Court to interpret (and the employer to be on notice) the claim that the alleged FMLA violation *may* have been willful.

### BACKGROUND

Ms. Hudson began working at Independence as a Billing Specialist in July 2008 and was promoted to Senior Billing Specialist in October 2014. During that time, Ms. Hudson says that she did not receive any negative performance reviews.

In February 2015, Ms. Hudson learned that she was pregnant. She applied for FMLA leave twice, and Independence approved her leave both times. Ms. Hudson first took intermittent FMLA leave between March 17, 2015 and August 2015, which she used to attend pregnancy-related appointments. Ms. Hudson took her second FMLA leave after her baby was

1

born, beginning on August 31, 2015. Although she expected to return to work on October 21, 2015, she ultimately did not return to work until the next month, November 2015, because she was seeking treatment for post-partum depression.

Ms. Hudson alleges that her pre-FMLA leave supervisor, Kharizma Johnson, advised that she "wasn't sure" what Ms. Hudson's role would be when she returned to work and that Ms. Johnson herself would no longer be working for Independence. Compl. ¶ 16. When Ms. Hudson returned to work, she alleges that there was a change in her supervisors' conduct towards her. She was assigned a new manager, Chris,[1] and a new acting supervisor, Diane Stefaniak. According to Ms. Hudson, Chris and Ms. Stefaniak held impromptu meetings near her workspace but specifically ignored her, only including her co-workers Jessica Nguyen, Michelle Anderson, and Nicole Boyd in those meetings. She also alleges that those same co-workers ignored her even though they all worked close to each other in the same work space. Ms. Hudson claims that all of her work was reassigned to those employees and, as a result, she was assigned "busy work" and to fill "in where needed," despite the senior position she held prior to her FMLA leave. Compl. ¶ 18.

In January 2016, Ms. Hudson was assigned a new permanent supervisor, Bainy.[2] She claims that Bainy told her that a "new" and "very important" process was being implemented and that he needed her to "make it work." Compl. ¶ 24. However, she says that she was provided little to no training or direction on this new process and was left to learn it on her own. During this time, Ms. Hudson was also allegedly required to attend several mandatory core competency classes. She wanted to take management level courses because she was a senior

---

[1]  Ms. Hudson only refers to her new supervisor as "Chris" in her complaint and does not provide a last name. Compl. ¶ 19.
[2]  Again, Ms. Hudson only refers to her new supervisor as "Bainy" in her complaint and subsequent filings.

level employee and had taken most of the other classes offered. However, she alleges that Bainy told her that she "didn't need to take those classes" and referred her to lower level classes. Compl. ¶ 28. Ms. Hudson claims that other similarly situated employees in her department were encouraged to take the management classes.

Around this time, Ms. Hudson received several poor performance reviews from Bainy. Ms. Hudson alleges that he made false statements about her performance, including that she was only working on "easy things" to complete work faster and that she was trying to get her co-workers in trouble by using quality control measures. Compl. ¶ 31. Bainy also stated in these negative performance reviews that Ms. Hudson was "not involved" with her co-workers, despite the fact that she alleges that it was her coworkers who ignored her. Compl. ¶¶ 29–30.

On August 9, 2016, ten months after Ms. Hudson returned to work following her FMLA leave, Independence terminated her employment. Independence did not provide any specific reasons for her termination, but Bainy allegedly told her that it "wasn't working out." Compl. ¶ 34. Ms. Hudson claims that, before her pregnancy, she did not have any complaints lodged against her or issues with her work, and that she had been given positive performance reviews. She alleges that Independence was hostile to her pregnancy, her need to take FMLA leave, and her post-partum depression diagnosis. She further alleges that she was terminated and suffered discriminatory treatment after she gave birth to the child.

**PROCEDURAL HISTORY**

Just over two years later, Ms. Hudson initiated this lawsuit against Independence on August 24, 2018. She alleges that Independence violated the (i) Americans with Disabilities Act; (ii) the Pregnancy Discrimination Act; (iii) the Pennsylvania Human Relations Act; and (iv) the Family and Medical Leave Act. The instant motion concerns only the fourth cause of action, in

3

which Ms. Hudson alleges Independence retaliated against her for taking leave under the FMLA. For this fourth count only, Independence seeks judgment on the pleadings in its favor.

## LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay trial . . . ." Under Rule 12(c), "judgment will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he [or she] is entitled to judgment as a matter of law." *Jablonski v. Pan American World Airways, Inc.*, 863 F.2d 289, 290 (3d Cir. 1988) (quotations omitted). As with a motion to dismiss under Rule 12(b)(6), the "Court 'view[s] the facts alleged in the pleadings and the inferences to be drawn from those facts in the light most favorable to the [nonmoving party].'" *Mele v. Federal Reserve Bank of New York*, 359 F.3d 251, 253 (3d Cir. 2004) (quoting *Leamer v. Fauver*, 288 F.3d 532, 535 (3d Cir. 2002)).

## DISCUSSION

Independence moved for partial judgment on the pleadings as to the fourth claim in Ms. Hudson's complaint: retaliation under the FMLA. Independence contends that Ms. Hudson's complaint failed to allege a willful violation of the FMLA. And, as a result, her FMLA retaliation claim is time-barred under the general two-year statute of limitations because Independence fired Ms. Hudson on August 9, 2016 but she did not file her complaint in this action until August 24, 2018. The Court denies the motion because Ms. Hudson sufficiently pleads willfulness under the liberal pleading standards of the Federal Rules of Civil Procedure to trigger the three-year statute of limitations.

Generally, the statute of limitations for FMLA claims is two years after the date of the last event constituting the alleged violation. 29 U.S.C. § 2617(c)(1). However, if the employer commits a "willful" violation of the FMLA, then the statute of limitations is extended to three

years.  29 U.S.C. § 2617(c)(2).  The FMLA does not define "willfulness," but courts in this circuit have found that willfulness requires a plaintiff to show that his or her "employer either knew or showed a reckless disregard for the matter of which its conduct was prohibited." *Jetter v. Rohm and Haas Chemicals, LLC*, No. 08-1617, 2011 WL 2473917, at *5 (E.D. Pa. June 22, 2011) (citing *Hillstrom v. Best Western TLC Hotel*, 354 F.3d 27, 33 (1st Cir. 2003)).[3]

Courts routinely assess the willful nature of FMLA violations at the summary judgment stage, when the record is more fully developed.  *See Emmell v. Phoenixville Hosp. Co., LLC*, 303 F. Supp. 3d 314, 327 (E.D. Pa. 2018) (granting a motion for summary judgment on an alleged FMLA violation because the complaint was untimely and "did not satisfy the standard for a willful action by an employer"); *Melilli v. Se. Pennsylvania Transp. Auth.*, No. 10-5865, 2012 WL 4473132, at *6 (E.D. Pa. Sept. 28, 2012) (analyzing willfulness on a claim by claim basis at the summary judgment stage); *Jetter*, 2011 WL 2473917, at *5 (granting summary judgment on an FMLA claim because the record did not contain evidence that the plaintiff's department manager "knew or showed reckless disregard for whether his conduct was prohibited by the FMLA" and was, thus, barred by the two-year statute of limitations); *Sommer v. Vanguard Group*, 380 F. Supp. 2d 680, 685 (E.D. Pa. 2005) (concluding that the plaintiff "failed to establish a genuine issue of material fact [at summary judgment] as to whether the defendant willfully violated the" FMLA).

---

[3]  In *Hillstrom*, a case of first impression, the Court of Appeals for the First Circuit found a parallel distinction between willful and negligent violations under the FMLA and the Fair Labor Standards Act. *See* 354 F.3d at 33 (citing *McLaughlin v. Richland Shoe Co*, 486 U.S. 128, 133 (1988)).  Although the Court of Appeals for the Third Circuit has not done so yet, several other circuits have expressly adopted this interpretation.  *See, e.g. Porter v. New York Univ. School of Law*, 392 F.3d 530, 532 (2d Cir. 2004); *Henson v. Bell Helicopter Textron, Inc.*, 128 F. App'x 387, 392–93 (5th Cir. 2005); *Ricco v. Potter*, 377 F.3d 599, 602–03 (6th Cir. 2004); *Sampra v. U.S. Dep't of Transp.*, 888 F.3d 330, 333–34 (7th Cir. 2018); *Hanger v. Lake County*, 390 F.3d 579, 583 (8th Cir. 2004); *Bass v. Potter*, 522 F.3d 1098, 1103 (10th Cir. 2008).

At the motion to dismiss stage, courts often take a less stringent approach in assessing whether an alleged FMLA violation is willful. *See Caucci v. Prison Health Serv., Inc.*, 153 F. Supp. 2d 605, 609 (E.D. Pa. 2001) (internal citations omitted) ("The Amended Complaint alleges that Defendant's conduct was 'willful, intentional, and in flagrant disregard of the provisions of the FMLA.' Under the liberal pleading standards of the Federal Rules of Civil Procedure, this is sufficient to plead willfulness and trigger the three-year statute of limitations."); *Yevak v. Nilfisk-Advance, Inc.*, No. 15-5709, 2016 WL 1359745, at *3 (E.D. Pa. Apr. 6, 2016) (denying a motion to dismiss a FMLA claim as time-barred when the complaint stated that the defendant's actions were a "willful violation of the Plaintiff's rights under the FMLA . . . ."); *Turevsky v. Fixtureone Corp.*, No. 10-2911, 2010 WL 5258065, at *4 (E.D. Pa. Dec. 23, 2010) (concluding, on a motion to dismiss, that the plaintiff had sufficiently alleged a willful violation by stating that the defendant terminated her a mere five days after she stated her intent to take FMLA leave because she sought to take that leave).

The Court recognizes that Ms. Hudson could have included more detailed allegations in her complaint about the willful nature of her FMLA retaliation claim; however, the Court is required to view the facts that have been alleged in the light most favorable to Ms. Hudson as the non-moving party. *See Mele*, 359 F.3d at 253. The complaint does not use the word willful but instead alleges retaliatory behavior that began after she returned from FMLA leave. In particular, she claims that her supervisors at Independence began treating her differently and that Independence was "hostile to [her] pregnancy, disability and need to take FMLA leave." Compl. ¶ 36. She says that she was assigned "busy work," excluded by supervisors from meetings, and required to attend training courses beneath her seniority level. Additionally, Ms. Hudson started receiving negative performance reviews even though she had never received such reviews in the

past. Ultimately, she alleges that she was terminated, at least in part, because she took FMLA leave. Although Ms. Hudson does not explicitly state that this behavior was "willful" in her complaint, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *See* Fed. R. Civ. P. 9(b). Based on the facts alleged in the complaint, and most particularly her allegations that her employer was "hostile" to her pregnancy and her taking FMLA leave, Ms. Hudson has stated a "plausible inference" that the alleged FMLA violation was willful. *Turevsky*, 2010 WL 5258065, at *4.

Ms. Hudson only has to meet the liberal pleading standards of a motion for judgment on the pleadings, and she has, albeit barely, met this standard. Therefore, her FMLA retaliation claim can proceed, for now. However, Independence can raise this issue again at summary judgment if discovery fails to demonstrate ultimately that Independence acted willfully.

## CONCLUSION

For the reasons set out in this Memorandum, the Court denies Independence's motion for partial judgment on the pleadings. An appropriate Order follows.

BY THE COURT:

/s/ Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE